

The New York Times Company

David E. McCraw
Senior Vice President
& Deputy General Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

December 12, 2023

**VIA FEDERAL EXPRESS**

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Braun, et al.*, No. 10-cr-433-KAM — Request for Unsealing of Records

Dear Judge Matsumoto:

I write on behalf of The New York Times Company ("The Times") to request the unsealing of certain court records pertaining to Defendant Jonathan Braun in the above-referenced case. It has been nearly four years since Mr. Braun was sentenced and more than two years since President Donald Trump commuted his sentence. Yet, a number of records on the docket of his criminal proceedings remain under seal. In some cases, even the docket entries themselves have been sealed. The Times asks that these records and docket entries now be unsealed, pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment.[1]

The president's power to pardon someone is absolute and unreviewable, and the public's only means of assuring that such an exceptional power is

---

[1] The right of access is an affirmative public right, and the standing of the press to enforce it is well settled. *See, e.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

not abused is by learning as much as possible about the pardoned individuals, what they have done to be convicted and sentenced, and how and why their clemency was granted. The Times often seeks the unsealing of court records, but the need for transparency and public accountability is particularly compelling in a case such as this.

Background

Mr. Braun was indicted on May 27, 2010, on drug conspiracy charges. (Dkt. 1.) Prosecutors alleged that Mr. Braun operated a drug trafficking ring responsible for importing more than 100 tons of marijuana—worth roughly $1.72 billion dollars—between 2007 and 2010. (Dkt. 14 at 4, 18.) He pleaded guilty to certain charges on November 3, 2011 (Dkt. 36) and was ultimately sentenced to 10 years' imprisonment on May 28, 2019 (Dkt. 162).

*The Anonymous Letters*

In August 2018 and April 2019, as Mr. Braun awaited sentencing, three letters by third parties were filed on the docket. (Dkts. 146, 154, 155.) Two are simply "anonymous" (Dkts. 154, 155), while the third is attributed to an entity called "Yellowstone Capital" (Dkt. 146). The letters are under seal and their docket entries do not say what they concern. But the letters became central to Mr. Braun's subsequent motion to vacate his sentence, filed on October 3, 2019 (Dkt. 174), and the filings related to that motion discuss the letters' contents and significance (*e.g.*, Dkt. 184).

As the Court described them, the letters were written by people "who have issues with Mr. Braun, who have felt that he mistreated them or has treated them harshly or has done things that some of these letter writers claim are illegal in terms of threatening behavior." (Dkt. 184 at 5-6, 76-77.) In particular, the letters, per the Court's description, referred to a "lawsuit by an individual who alleges that just this past summer, at an engagement party, Mr. Braun intentionally shoved him off a two-story balcony and he sustained very serious injury." (*Id.* at 6, 39.) The letters also cited a second lawsuit claiming that Mr. Braun

"had threatened a rabbi with physical and reputational harm – by 'community' exposure and 'embarrass[ment]' as a lying thief – over a delinquent business debt." (*Id.* at 5-6, 40-41.) The Government took time to investigate these allegations but ultimately submitted that it did not have sufficient evidence of additional criminal conduct. (*See* Dkt. 190.) Still, the Court referenced the letters and allegations at Mr. Braun's sentencing hearing on May 28, 2019. (*See* Dkt. 184 at 61.)

Several months later, Mr. Braun moved to vacate his sentence, arguing that the Court improperly relied on the letters in sentencing him and that his attorney's failure to object to them amounted to ineffective assistance of counsel. (*See id.* at 1-20.) The Court denied that motion on December 23, 2019. (Dkt. 190.) It found that, because its sentence "did not rely upon the allegations contained in the anonymous letters at issue," Mr. Braun's claim for ineffective assistance failed. (*Id.* at 29.) But filings related to the motion to vacate remain partly under seal, despite an unsealing request made by Bloomberg News in November 2019. (*See* Dkt. 180; Min. Order (Dec. 12, 2019).)

*Mr. Braun's Pardon*

In January 2021, President Trump pardoned Mr. Braun on his last day in office.[2] The circumstances surrounding the pardon became the subject of significant public interest and news reporting.[3] As The Times and others reported, the pardon came months after Mr. Braun had been sued by the New York State Attorney General and the Federal Trade Commission for allegedly making predatory loans to

---

[2] *Statement from the Press Secretary Regarding Executive Grants of Clemency*, White House, https://tinyurl.com/2p8uv8su (Jan. 20, 2021).

[3] *See, e.g.*, Michael S. Schmidt, Maggie Haberman & William K. Rashbaum, *Trump's Last-Minute Pardon Frees Man Still Facing Accusations of Violence*, N.Y. Times (Jan. 22, 2021), https://tinyurl.com/36k5rebn; Zeke Faux, *The Loan Shark Trump Freed From Prison Is Lending Money Again*, Bloomberg (Feb. 10, 2022), https://tinyurl.com/3j9vcru3; *See* Michael S. Schmidt, Maggie Haberman, Jonathan Swan & Alan Feuer, *A Troubling Trump Pardon and a Link to the Kushners*, N.Y. Times (Nov. 26, 2023), https://tinyurl.com/3h922wcs.

small businesses and threatening them with violence when they refused to repay.[4] And in the years since President Trump's pardon, these suits have come to fruition: In September 2023, a New York court held that "the NY AG has demonstrated that the Predatory Lenders are loan sharks who perpetrated a massive fraud on desperate merchants," enjoining Braun and his co-defendants from these fraudulent practices and imposing monetary penalties. *People of New York v. Richmond Cap. Grp. LLC*, 451368/2020 (N.Y. Sup. Ct. Sept. 15, 2023). The same month, a federal court found Mr. Braun liable for his "scheme to defraud small businesses and to intimidate their owners." *Fed. Trade Comm. V. RCG Advances, LLC et al.*, 20-cv-04432-JSR (S.D.N.Y. Sept. 27, 2023). At the time of the pardon, Mr. Braun was also under investigation by federal prosecutors for the same alleged conduct.[5]

*The Sealed Records*

As of December 2023, several records on the docket pertaining to Mr. Braun's criminal proceeding remain fully under seal, including:

- the prosecution's sentencing memorandum, filed on May 1, 2019 (Dkt. 156);

- the anonymous sentencing letters, filed in August 2018 and April 2019 (Dkts. 146, 154, 155); and

- a letter regarding the adjournment of Mr. Braun's sentencing, filed on June 18, 2018 (Dkt. 138).

As noted, Mr. Braun's memorandum in support of his motion to vacate also remains available only in redacted form. (Dkt. 184.) And there

---

[4] Schmidt et al., *supra* note 3; *see also Attorney General James Sues Predatory Lender That Threatened Violence and Kidnapping, and Illegally Collected Millions from Small Businesses*, N.Y. Attorney General Letitia James (June 10, 2020), https://tinyurl.com/mrrwpz5z.

[5] Schmidt et al., *supra* note 3.

appear to be several entries missing from the public docket—specifically, docket numbers 35, 97, 101, 111, 124, 126, 130, 132, 133, 137, 140-41, 143-45, 148, 150, 157, 164, 170, 189, and 191—though it is not clear that all of these entries relate to Mr. Braun.

The Times hereby seeks access to all of the above records and docket items.

<u>The Right of Access to Judicial Records</u>

As this Court has already recognized in this case (Min. Order (Dec. 12, 2019)), there is both a common law right of access to judicial documents, *see Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978), and a First Amendment right of access to both judicial proceedings and certain judicial documents, *see, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (First Amendment right to judicial proceedings); *In re New York Times*, 828 F.2d 110, 114 (2d Cir. 1987) (First Amendment right to judicial documents).

Also well-established is the Second Circuit law governing the public's common law right of access to judicial records. Any "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Courts determine the strength of the presumption by considering "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (cleaned up). As a result, under *Lugosch*, judicial documents must be released unless countervailing interests require withholding. *See* 435 F.3d at 119.

An additional First Amendment presumption of access attaches to certain judicial documents under the "experience and logic" test derived from *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986). Under that test, when documents have historically been available and their public disclosure is important to the proper

functioning of judicial proceedings, they are subject to an additional, constitutional presumption of access. *Id.* That constitutional presumption may be overcome only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest"—a higher standard than under the common law. *Id.*; *see also Lugosch*, 435 F.3d at 124 (evaluating sealing under the "more stringent First Amendment framework").

The Records and Docket Entries Should Be Unsealed

The public's right of access—both that rooted in the common law, and in the First Amendment—requires disclosure of the records and docket entries that The Times seeks here.

a. *The Prosecution's Sentencing Memorandum (Dkt. 156)*

The Second Circuit has squarely held that the First Amendment right of access applies to sentencing proceedings and related documents. *United States. v. Alcantara*, 396 F.3d 189, 196-98 (2d Cir. 2005); *see also United States v. Munir*, 953 F. Supp. 2d 470, 477 (E.D.N.Y. 2013) ("The qualified right of access to judicial proceedings and documents, protected under the Constitution and common law, extends to materials submitted to the Court in connection with sentencing that the Court is asked to consider.") (cleaned up). Access to sentencing memoranda is critical for public confidence in the judiciary, which "is founded on the fact that the material judges rely on for decision is available to the public." *United States v. Huntley*, 943 F. Supp. 2d 383, 385 (E.D.N.Y. 2013). The need for public monitoring of the courts is at its height when the Government is using its powers to take the liberty of an individual, and the public has a compelling interest in making certain, through transparent processes, that defendants are not being singled out for unduly harsh or lenient penalties.

Pursuant to *Alcantara*, the prosecution's sentencing memorandum is subject to the public's qualified right of access. In fact, it remains unclear why the document was filed under seal. But at this point— almost four years after Mr. Braun was sentenced and more than two

years after he was pardoned—the Government is required to establish why the public's right of access should be set aside and blanket sealing remains necessary. To the extent the memorandum was sealed to keep secret Mr. Braun's cooperation with prosecutors, that fact has since been disclosed by Mr. Braun through his then-representative Alan Dershowitz.[6]

b. *Sentencing Letters (Dkts. 146, 154, 155)*

The anonymous sentencing letters are also subject to both a common law and First Amendment right of access and must be released.

As a general matter, "[d]ocuments used in aid of sentencing are . . . presumed to be open to the public pursuant to the common law right of public access." *United States v. Johnson*, 2018 U.S. Dist. LEXIS 56853, at *2 (E.D.N.Y. Apr. 3, 2018) (quoting *Huntley*, 943 F. Supp. 2d at 385). That right of access encompasses sentencing letters like those at issue here, which "are designed to have a direct impact on the Court's sentence" and are therefore "directly 'relevant to the judicial function.'" *United States v. Gotti*, 322 F. Supp. 2d 230, 249 (E.D.N.Y. 2004) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). Again, the common law presumption of access is at its apex in the context of sentencing: there is arguably no more weighty exercise of Article III judicial power than the decision to deprive a criminal defendant of their liberty. Notably, whether or not the court relies on a letter in its sentencing decision is irrelevant in the access analysis. *Johnson*, 2018 U.S. Dist. LEXIS 56853, at *3 ("[T]he presumption of public access is entitled to great weight whenever a party submits a document to the court for the purposes of influencing its decision, regardless of whether the court ultimately relies on this document.") (cleaned up). Though this court has previously declined to apply the

---

[6] *See* Schmidt et al., *Trump's Last-Minute Pardon Frees Man Still Facing Accusations of Violence*, *supra* note 3 ("Mr. Dershowitz said he believed Mr. Braun's argument for clemency was 'meritorious,' because Mr. Braun cooperated with prosecutors 'for a good many years, and was told that his cooperation would be recognized and he didn't get that recognition.'").

First Amendment right of access to sentencing letters, *Gotti*, 322 F. Supp. 2d at 249-50, decisions in this and other Second Circuit courts have applied both the common law and First Amendment rights of access to such letters. *See, e.g.*, *Munir*, 953 F. Supp. 2d at 477-78 (ordering letters from relatives and associates "be publicly filed and docketed with appropriate redactions") ("Access to . . . letters of support from third parties can be protected" under "the Constitution and common law."); *United States v. Lawrence*, 167 F. Supp. 2d 504, 506 (N.D.N.Y. 2001) (letters submitted to clerk of the court, unlike those sent privately to judge, subject to access).

Moreover, the letters are *independently* subject to both the common law and First Amendment right of access because they were repurposed to form a critical part of Mr. Braun's motion to vacate his sentence. This Court has already recognized that a constitutional right attaches to the papers related to this motion to vacate, in response to Bloomberg's previous unsealing request. (*See* Min. Order (Dec. 12, 2019) ("The court recognizes the First Amendment right of access to the courts by the public and press.").) Under that holding, the papers relating to that motion must also be "judicial documents" subject to a common law right of access. *Lugosch*, 435 F.3d at 120. The fact that Mr. Braun did not file the letters on the public docket as part of his motion is inapposite: they were at the heart of the relief Mr. Braun sought. *See, e.g.*, *United States v. Ullah*, 18-cr-16-RJS, Dkt. 56, at 2 n.1 (S.D.N.Y. Nov. 5, 2018) (parties "cannot skirt the public's right of access to judicial documents simply by declining to file a document with the Clerk").

That leaves the Government with the burden of establishing facts on the record to justify the sealing despite the presumption of access. Specifically, under the more rigorous First Amendment standard, the question is whether sealing "is necessary to preserve higher values and . . . the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. Should the Government try to justify the sealing on the basis of the privacy interests of the letter-writers, there is little weight to that rationale; the letters are apparently unsigned.

Nor can the Government plausibly argue that there is a need for secrecy in the letters' content. Both the Court and Mr. Braun have already discussed—at length, in publicly available filings—the contents of the letters, which themselves seem to refer to publicly filed lawsuits.

In sum, both the common law and First Amendment rights of access support unsealing of these letters. The public interest does as well. As is clear from the public descriptions of them, two of the letters allege incidents of violent that we know to be part of a broader pattern.[7] Another of the letters is from Yellowstone Capital, a merchant cash advance dealer in an industry where many players, including Braun, have faced investigation.[8] That connection raises even further questions about the contents of the letter. Especially given the circumstances of Mr. Braun's commutation, a strong public interest in unsealing underlies the right of access here.

c.  *The Letter Regarding the Adjournment of Sentencing (Dkt. 138)*

Also under seal is a letter regarding the adjournment of Mr. Braun's sentencing. (Dkt. 138.) No explanation has been given for keeping this letter under seal. To the extent the Government provides a rationale, The Times respectfully requests the opportunity to respond to that rationale on reply.

d.  *The Motion to Vacate Papers (Dkts. 181, 184, 186, 187)*

The Times also seeks the unredaction of the filings related to Mr. Braun's motion to vacate his sentence. *See* Dkts. 184, 186, 187. The Court's December 12, 2019, order upheld these redactions based on "the defendant's and the government's assessments of the legitimate law enforcement and safety concerns at issue." (Min. Order (Dec. 12,

---

[7] *See* Schmidt et al., *Trump's Last-Minute Pardon Frees Man Still Facing Accusations of Violence*, *supra* note 3.

[8] *See* Schmidt et al., *A Troubling Trump Pardon and a Link to the Kushners*, *supra* note 3.

2019.) The Times asks the Court to revisit whether these interests remain viable with the passage of time and the disclosure of Mr. Braun's cooperation, and whether they are sufficient to outweigh the public's First Amendment right of access.

The Court should also unseal the letter Mr. Braun filed in opposition to the unsealing of these materials (Dkt. 181) unless the Government can justify the continued sealing at this point. *See In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 296 (D.C. Cir. 2022) (holding the government's opposition to unsealing motion was itself a judicial record subject to the common law right of access); *In re McCormick & Co., Inc. Pepper Prod. Mktg. & Sales Practices Litig.*, 316 F. Supp. 3d 455, 467 (D.D.C. 2018) (applying common law right of access and denying motion to seal opposition to a motion to unseal).

e. *Missing Docket Entries*

Finally, The Times requests access to docket items that do not appear at all on the public docket of this case.[9]

We thank the Court for its consideration of this matter.

Respectfully submitted,

David E. McCraw

---

[9] See Dkts. 35, 97, 101, 111, 124, 126, 130, 132, 133, 137, 140-41, 143-45, 148, 150, 157, 164, 170, 189, and 191. Docket items 145 and 150 are apparently letters from the Government seeking adjournment of Mr. Braun's sentencing. (*See* Dkt. 190 at 6-7.) Like docket item 138, these should be unsealed.

It appears that docket item 133 is a Pre-Sentence Report, while docket item 140 is an addendum to that report. (*See* Dkt. 190 at 5.) The Times does not seek access to these records, though the docket entries themselves should be unsealed.