
**Federal Defenders OF NEW YORK, INC.**

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

Tamara L. Giwa
Executive Director and
Attorney-in-Chief

Michelle A. Gelernt
Attorney-in-Charge

October 24, 2025

<u>**Via ECF and Email**</u>[1]
Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, N.Y. 11201

      Re:    *United States v. Jonathan Braun, 10- cr-433 (KAM)*

Dear Judge Matsumoto:

On behalf of Jonathan Braun, we respectfully submit this letter urging the Court to impose a sentence of time served, followed by two additional years of supervised release, with the first three to six months served in a residential in-patient treatment program. The past seven months in custody have given Mr. Braun significant time to reflect on the very serious harm his behavior caused, and to take steps to ensure that he can be successful on supervision moving forward. Notably, and as detailed below, Mr. Braun has met with a psychiatrist and maintained seven months of sobriety, through the support of his family and faith community. A time-served sentence which restores Mr. Braun to supervision, and includes in-patient treatment, meets the permissible purposes of sentencing – community safety, deterrence, and most importantly, rehabilitation.

**I.** ███████████████████████████



---

[1] Counsel requests to file an unredacted version of this document under seal so as to protect confidential medical information and information related to minor children.



II. ███████████████████████████████

Dr. Goldsmith strongly recommends that, upon release, Mr. Braun "participate in a residential treatment program three to six months in length," emphasizing that such placement would "assist Mr. Braun in achieving recovery and reduce his risk of criminal recidivistic behavior." *Id*.  Mr. Braun is eager to do so, should the Court permit him.

### III. Support from Faith and Family

Mr. Braun has used his time in custody to rebuild a foundation of faith and community support. Rabbi Chaim Pollack, who has counseled Mr. Braun twice weekly, wrote to the Court that Mr. Braun "has consistently expressed genuine remorse for his past actions and a sincere desire to rebuild his life and reunite with his wife and children." Exhibit C (Rabbi Pollack Letter of Support). Rabbi Pollack emphasized, "In my professional judgment, Mr. Braun has demonstrated the capacity for change and a strong commitment to becoming a positive influence in his family and community." *Id*.

His brother-in-law, Dr. Benjamin Miller, a clinical psychologist, described him as "a devoted husband, the loving father of three beautiful children, the deeply caring son and brother… whose family's well-being depends deeply on his presence and guidance." Exhibit D (Miller Letter of Support). Dr. Miller attested that "Jonathan has so much good in him, and I believe he still has the opportunity to use that good to make amends and move forward in a positive direction." *Id*.

Similarly, close family members and friends agree that Mr. Braun has the capacity to change and grow – and would benefit from community treatment. In the words of one family friend, "By allowing him to be at home and attend therapy and rehabilitation he will be a better person for his family and society." Exhibit E (Waldman Letter of Support).

Mr. Braun's desire to maintain sobriety and focus on a productive life moving forward is fueled most deeply by his three small children. As his wife, Miriam Hurwitz wrote, "Beneath the addiction, Jonathan is a good man — a devoted father and someone who, before all this, lived for his children. We have three children together…and they miss him every single day." Exhibit F (Hurwitz Letter of Support). Even while incarcerated, Mr. Braun has done his very best to maintain relationships with his three children, ages 11, 9, and 7. Mr. Braun understands the value of being there for his children, because he has come to experience that comfort from his own father, who himself has been very ill and struggling with kidney disease throughout Mr. Braun's incarceration. *See* Exhibit G (J. Braun Letter of Support).



[redacted]

*Id*. This exchange captures the profound loss experienced by Mr. Braun's children in their father's absence. Continued incarceration deepens that wound without advancing any rehabilitative purpose.

These letters and emails by the people who know Mr. Braun best, coupled with the psychiatric evaluations, illustrate that Mr. Braun now has the essential supports—spiritual, familial, and therapeutic—to sustain long-term rehabilitation under the close supervision of Probation.

### IV. A Time Served Sentence with Release to Inpatient Treatment

Mr. Braun has already served approximately seven months at MDC Brooklyn, a period that has brought both sobriety and stability. Probation itself recommends ongoing mental health and anger-management treatment as conditions of supervision. The medical consensus from Drs. Goldsmith and Kotbi is that incarceration is not therapeutic; treatment is. As Rabbi Pollack—a former addict himself—put it: "continued therapy and rehabilitation would be far more effective for Mr. Braun's long-term recovery and reintegration into society." Exhibit C.

Moreover, both the Supreme Court and the United States Sentencing Commission agree that, in fashioning an appropriate sentence for a revocation of supervised release, the Court should not entertain punitive considerations, but instead be forward looking, valuing rehabilitative ends. A sentence of time served plus two years of supervised release—with the first three to six months in a residential in-patient treatment program—directly implements these principles while preserving Court oversight and public safety.

#### a. Courts May Not Consider Just Punishment When Revoking Supervised Release

When the Court imposes sentence following a revocation of supervised release, it must balance a number of factors identified in 18 U.S.C. § 3583(e)(3). Chief among them are the needs to deter the defendant, protect the public, and most effectively provide necessary rehabilitation. See 18 U.S.C. § 3583(e)(3) (citing 18 U.S.C. § 3553(a)(2)(B)-(D)).

The Supreme Court recently held in *Esteras v. United States*, 145 S. Ct. 2031 (2025), that, in revoking supervised release, a district court *cannot* consider what is ordinarily considered the first purpose of sentencing: the need to afford just punishment and impose a sentence that reflects the seriousness of the offense. The Court reasoned that, because supervised release "fulfills rehabilitative ends" and "provides individuals with post confinement assistance," a defendant who violates the conditions of his supervised release, "must consider the forward-

looking ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the backward-looking purpose of retribution." 145 S. Ct. at 2041.

### b. Amendments to the Sentencing Guidelines Emphasize Rehabilitation in Sentencing

The U.S. Sentencing Commission agrees. Forthcoming guidelines amendments, scheduled to take effect November 1, 2025, echo *Esteras* and reflect a fundamental reorientation of supervised release away from punishment and toward its intended non-punitive purpose: to promote successful reentry, rehabilitation, and public safety. The amendments emphasize that unlike probation, which includes punishment among its goals, supervised release primarily fulfills rehabilitative ends, distinct from those served by incarceration. Under the amendments, Courts are to make individualized decisions not only when imposing supervision but also throughout the term, including in response to violations. Further, the Commission has stated that even where revocation is appropriate,

> the sentence imposed upon revocation should be tailored to address the failure to abide by the conditions of the court-ordered supervision; imposition of an appropriate punishment for new criminal conduct is not the primary goal of a revocation sentence. The determination of the appropriate sentence on any new criminal conviction that is also a basis of the violation should be a separate determination for the court having jurisdiction over such conviction.

*Amendments to the Sentencing Guidelines* at 69 (Apr. 30, 2025) [2].

Given the Commission's new clear guidance that violations of supervised release should be responded to in a flexible and individualized manner, with an eye towards rehabilitation instead of punishment, the Court should apply the principles in the November Guidelines amendments to Mr. Braun's violations.

### V. Conclusion

This case is not about excusing Mr. Braun's conduct. It is about recognizing, through credible medical opinions and observed transformation, that his conduct was driven by a treatable illness—one from which he is now in recovery. As Dr. Goldsmith concluded, "█████████████████████████████████. He is motivated to participate in treatment and live a sober life".

---

[2] U.S. Sentencing Commission, Amendments to the Sentencing Guidelines, Chapter 7 – Part A (effective date: Nov. 1, 2025) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)) at 35, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202505_RF.pdf (hereinafter "Guidelines Amendments")

      Incarceration saved Mr. Braun's life. Continued imprisonment would only stall the progress that confinement and reflection have made possible. The better course—the rehabilitative course—is to continue his recovery in a structured clinical setting and allow him to rebuild his family and community life under strict supervision.

      For these reasons, we respectfully urge the Court to impose a sentence of time served, followed by two years of supervised release, with a special condition requiring immediate placement in a three-to-six-month residential treatment program approved by the U.S. Probation Office.

Respectfully submitted,

*/s Kathryn Wozencroft*

Kathryn Wozencroft
Federal Defenders of New York
Counsel for Mr. Jonathan Braun

cc:    AUSA Tanya Hajar
        AUSA Rachel Bennek
        USPO Heather Clark